**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC., | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Action No. AW-04-711 |
| | * | |
| HARVARD.NET, INC., et al, | * | |
| | * | |
| Defendants | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

This action was removed from the Circuit Court of Montgomery County, Maryland. Plaintiff Beyond Systems, Inc. ("BSI" or "Plaintiff") alleges that Defendant OC3 Networks & Web Solutions, LLC ("OC3" or "Defendant") was involved in the business of sending unsolicited commercial e-mail messages to residents in Maryland and elsewhere. Currently pending before this Court is a Motion to Dismiss [52] Plaintiff's Complaint against OC3 for lack of personal jurisdiction, Plaintiff's Motion to Strike OC3's "Reply in Support of Motion to Dismiss" and for Leave to Take Jurisdictional Discovery [56], and Plaintiff's Motion for Leave to File a Second Amended Complaint [66]. The Motions have been fully briefed by the parties and is ripe for consideration. No hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2004). Upon consideration of the arguments made in support of, and opposition to, the Motions, the Court will GRANT OC3's Motion to Dismiss the Complaint for Lack of Jurisdiction, DENY BSI's Motion to Strike, and DENY BSI's Motion for Leave to File a Second Amended Complaint.

1

**STANDARD OF REVIEW**

*Motion to Dismiss*

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Combs, 886 F.2d at 676. If the court chooses to rule without conducting an evidentiary hearing, relying solely on the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396. "In deciding whether the plaintiff has made the requisite showing, a court must take all disputed facts and reasonable inferences in favor of the plaintiff." Id.

*Motion to Strike*

Motions to strike pleadings or a portion thereof are governed by Rule 12(f) of the Federal Rules of Civil Procedure. Motions brought under this Rule are typically disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001); see also Talbot v. Robert Matthews Distribut. Co., 961 F.2d 654, 664-65 (7th Cir. 1992) (noting that allegations may be stricken under Rule 12(f) if the matter bears no possible relation to the controversy or may cause the objecting party prejudice).

*Motion for Leave to File an Amended Complaint*

Rule 15(a) of the Federal Rules of Civil Procedure provides that once a responsive pleading has been served, "a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be given freely when justice so requires." FED. R. CIV. P. 15(a). The decision whether to grant leave to amend falls within the "sound discretion" of the trial court. Foman v. Davis, 371 U.S. 178, 182 (1962). Moreover, the "federal rules strongly favor granting leave to amend." Medigen of Ky., Inc. v. Pub. Serv. Comm'n, 985 F.2d 164, 167-68 (4th Cir. 1993). A motion to amend under Rule 15(a) "should be denied *only* when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (citing Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Delay alone, without prejudice to the opposing party, is an insufficient reason to deny leave to amend. See Edwards, 178 F.3d at 242.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are relevant to the instant motions. BSI, a Maryland corporation, with its principal place of business in Montgomery County, Maryland, has been an Internet services provider ("ISP") since 1996. BSI has several e-mail addresses, all registered to BSI's physical address in Wheaton Maryland. OC3, a California limited liability company with its principal place of business in Los Angeles, California, is an ISP that is in the business of providing Internet service and web-hosting services. BSI alleges that it received a large quantity of e-mails advertising goods or services, commonly referred to as "spam" e-mails, from Internet protocol ("IP") addresses controlled by OC3. BSI alleges that these spam e-mails were directed to recipients in Maryland and

that Defendant derived substantial revenue as a result of these e-mail messages to recipients in Maryland. By this conduct, BSI contends that OC3 solicited sales and conducted business in Maryland on a regular basis, engaged in a persistent course of conduct in Maryland, and availed itself of the protection of the laws of Maryland.

On December 29, 2003 Plaintiff commenced this action in Maryland state court alleging violations § 14-3002 of the Commercial Law Article of the Code of Maryland. BSI added OC3 as a defendant to this action in its Amended Complaint on February 2, 2005. Specifically, BSI argues that Defendant participated in the transmission of bulks of commercial e-mail containing false or misleading information in the origin or transmission path, or in the subject line, or both. On March 10, 2004, this action was removed to federal court based on this Court's original jurisdiction under 28 U.S.C. § 1332. On September 6, 2006, OC3 filed a Motion to Dismiss the Complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(2).

## DISCUSSION

*Motion to Strike*

"[U]pon motion made by either party within 20 days after the service of the pleading upon the party ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). Motions brought under Rule 12(f) are typically disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, 252 F.3d at 347. BSI contends that OC3's Reply Memorandum in Support of its motion to dismiss complaint should be stricken because it improperly presents the bulk of OC3's arguments that should have been presented in its original motion. OC3 counters that its reply in support of its

4

motion to dismiss was properly filed, and that BSI's motion to strike was devoid of legal authority and a surreply.

Local Rule 105.2.a permits the filing of "reply memoranda within eleven days after service of the opposition memoranda" and requires that any motion be "accompanied by a memorandum setting forth the reasoning and authorities in support of it." Local Rule 105.2.a (D. Md. 2004). BSI filed its opposition response on October 2, 2006, and OC3 filed its reply on October 12, 2006. Therefore, it appears to the Court that OC3 properly filed its reply memoranda to BSI's response within the required time period. Accordingly, the Court will deny BSI's Motion to Strike OC3's reply memoranda.

*Motion to Dismiss*

I.  Applicable Law

A court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction, and (2) the assertion of that jurisdiction is consistent with constitutional due process." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland courts have consistently held that Maryland's long-arm statute, Md. Code Ann., Cts & Jud. Proc. § 6-103, extends to the limits allowed by the Constitution under the Due Process Clause of the Fourteenth Amendment, and therefore, the statutory inquiry merges with the constitutional inquiry. See Carefirst, 334 F.3d at 396-97. A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Under the due process analysis, two types of personal jurisdiction exist: specific jurisdiction

and general jurisdiction. Specific jurisdiction is available when the nonresident defendant's contacts with the forum state also provide the basis for the suit. See Carefirst, 334 F.3d at 397. In determining whether specific jurisdiction exists, a court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). On the other hand, general jurisdiction is available only where the nonresident defendant's contacts with the forum state are "continuous and systematic." Id. at 712; see also Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 (1984).

II.     Analysis

Plaintiff must make a prima facie showing of personal jurisdiction by demonstrating that Defendant is subject to Maryland's long-arm statute, which confers personal jurisdiction over a party who, *inter alia*, "causes tortious injury in the State by an act or omission in the State" or "causes tortious injury in the State or outside the State by an act or omission outside of the State if he regularly does or solicits business . . ." in the state. MD. CODE ANN., CTS & JUD. PROC. § 6-103(b)(1)(2).

OC3 asserts that it is a California limited liability company maintaining its offices exclusively in California; that it primarily sells bandwidth to third-party ISPs who resell OC3's bandwidth to customers of their own; and that other than the sale of bandwidth, OC3's only other sources of income are from fees charged for (1) the rental of cabinet space, (2) hosting customers' websites on OC3's computer servers, and (3) computer security/firewall services, all of which are

located at OC3's facilities in Los Angeles, California. OC3 also contends that it does not conduct business of any kind with any customer located in Maryland, does not advertise in the State, or derive any income from any other source in the state of Maryland or had any contacts with any persons or entities in Maryland. Similarly, OC3 asserts that it has never had any direct dealings with Plaintiff, whether in Maryland or elsewhere, and that it never sent an email to Plaintiff.

BSI contends that it made a *prima facie* showing of personal jurisdiction when it alleged that OC3 used an interactive website to direct electronic activity into the state of Maryland with the manifest intent of conducting commercial activities with Maryland residents. Specifically, BSI points to OC3 having the following contacts with Maryland: (1) the volume of spam (approximately 465,000 messages) BSI allegedly received from OC3 IP addresses; (2) the advertisement of products and services through the e-mails received by BSI from OC3 IP addresses did not exclude Maryland residents; and (3) the nature of services as advertised by OC3's website are national in scope and have no physical barrier to the rendering of services in Maryland. BSI also contends that, even if OC3 did not directly act, OC3 can be held liable based on the allegation that OC3 conspired with its customers, via express or implied agreement, which directly participated in the aforementioned conduct.

**A.     Specific Jurisdiction**

Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). In the context of a nonresident who has entered the forum state by way of the Internet, for jurisdictional purposes, the Fourth Circuit articulated in ALS Scan a three-prong approach justifying specific jurisdiction where the nonresident defendant "(1) directs

7

electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." ALS Scan, 293 F.3d at 714. A "sliding scale" test is applied, in which, at one end of the scale "are situations where a defendant clearly does business over the Internet" by entering into contracts on the defendant's website with entities located in the forum state. Id. at 713 (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123 (W.D. Pa. 1997)). At the other end of the scale, where the assumption of jurisdiction clearly would not be constitutional, is a defendant who operates a "passive" website "that does little more than make information available to those who are interested in it." Id. More recently, the Fourth Circuit observed that where a "website is neither merely passive nor highly interactive, the exercise of jurisdiction is determined 'by examining the level of interactivity and commercial nature of the exchange of information that occurs.'" Carefirst, 334 F.3d at 400 (internal citations omitted). Based on the above principles, the essential test for purposeful availment in the Internet context is whether the defendant has "done something more than merely place information on the [I]nternet. Rather, [the nonresident defendant] must have acted with the 'manifest intent' of targeting Marylanders." Id. at 401 (internal citation omitted).

Taking the facts in the light most favorable to Plaintiff, BSI has failed to demonstrate that OC3 acted with a "manifest intent" of targeting Maryland consumers specifically. Although solicitation of business in a state may support an exercise of jurisdiction, Travelers Health Ass'n v. Commonwealth of Virginia ex rel State Cor. Comm., 339 U.S. 643 (1950), BSI has not demonstrated any evidence that OC3 availed itself of the privilege of conducting *any* activities in Maryland. The mere fact that customers of OC3's customers can target individuals and entities in Maryland does

not equate to OC3 itself aiming to reach any Maryland residents. Furthermore, while OC3's website can be said to be somewhat interactive in that customers can request technical support and access account and billing information, and browsers can contact sales representatives, OC3 asserts that it has no clients that are Maryland residents and BSI has offered no evidence refuting this assertion.

In sum, OC3's website focuses on advertising potential sales from customers throughout the United States rather than on customers from the forum state of Maryland. Thus, the character of OC3's website does not justify the assertion of personal jurisdiction under the theory of specific jurisdiction.

**B.     General Jurisdiction**

In the context of personal jurisdiction, the Fourth Circuit has cautioned that "broad constructions of general jurisdiction should be generally disfavored." Nichols v. G.D. Searle & Co., 991 F.3d 1195, 1200 (4th Cir. 1993). In fact, with regard to nonresidents, general jurisdiction is ordinarily reserved for those defendants who have such substantial contacts with the forum state that they may be considered "essentially domiciled" within the state. See Estate of Stephen Bank v. Swiss Valley Farms Co., 286 F. Supp. 2d 514, 518 (D. Md. 2003).

Plaintiff asserts that general jurisdiction exists over OC3 by virtue of persistent, continuous, and systematic conduct in the sending of e-mails, but has not cited to authority to support a finding of general jurisdiction on these facts. BSI's assertion fails because BSI has only presented evidence that the e-mails BSI received originated from OC3's IP addresses. The Fourth Circuit has explicitly rejected the notion that general jurisdiction may be founded over "out-of -state persons who regularly and systematically transmit electronic signals into the state via the Internet based solely on those transmissions." ALS Scan, 293 F.3d at 715 (stating that in addition to the transmissions,

"[s]omething more would have to be demonstrated"). The mere fact that OC3's customers or customers of OC3's customers may have targeted Maryland residents does not mean that OC3 itself targeted Maryland residents. Furthermore, BSI's attempt to label OC3's internet-based activities as "highly interactive" fails because BSI has not identified anything that OC3 has done to target Internet users in Maryland. BSI has not alleged that OC3 has an office in Maryland or that OC3 directly aimed any e-mails at Maryland residents. BSI has identified nothing more than *potential* contacts, coupled with the harmful effects of the prolific volume of e-mails, as a basis for personal jurisdiction over OC3. For the reasons stated above, the potential contacts and the volume of e-mails, separately or in combination, fails to come close to being continuous and systematic. Because BSI has not identified "something more" than merely Internet accessibility to assert a basis of personal jurisdiction, this Court cannot conclude that OC3's connection to Maryland is sufficiently continuous or systematic.

**C.      Conspiracy Theory of Jurisdiction**

Plaintiff presents the argument that personal jurisdiction over OC3 is also found under the conspiracy theory of jurisdiction. Under the conspiracy theory of jurisdiction, personal jurisdiction via conspiracy exists even when the co-conspirators has no direct contacts with the forum when:

> (1) two or more individuals conspire to do something (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators[.]

Cawley v. Block,, 544 F. Supp. 133, 135 (D. Md. 1982); see also Mackey v. Compass Marketing, Inc., 391 Md. 117, 135 (2006) (stating that "a co-conspirator can be subjected to the personal jurisdiction of a particular forum only if the co-conspirator had a reasonable expectation, at the time

10

the co-conspirator agreed to participate in the conspiracy, that acts to be done in furtherance of the conspiracy by another co-conspirator would be sufficient to subject that other co-conspirator to personal jurisdiction in the forum."). The Maryland Court of Appeals bases the conspiracy theory of jurisdiction "on the premise that one co-conspirator is acting as the agent of the others, and that those acts are acts of the other co-conspirator done by an agent within the meaning of § 6-103(b) of the Maryland long-arm statute." Mackey, 391 Md. at 129.

Again, BSI's assertions fail because BSI presents no actual evidence that OC3 entered into an agreement, express or implied, to assist its customers in sending e-mails to BSI or to provide web hosting and email hosting services that are designed to allow their customers to send bulk e-mails. See Hill v. Brush Engineered Materials, Inc., 383 F. Supp. 2d 814, 821 (D. Md. 2005) (stating that a conspiracy requires "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act . . . with the further requirement that the act or means employed must result in damages to the plaintiff."). Because BSI has not proffered evidence that a conspiracy existed between OC3 and its customers or between OC3 and customers of OC3's customers that sent the e-mails to BSI, this Court cannot conclude that personal jurisdiction exists under the conspiracy theory of jurisdiction.

**D.    Limited Discovery**

The Court notes that BSI, in its Opposition, asserts that it is entitled to take discovery as to the full nature of OC3's contacts with Maryland residents. Generally, discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted. See Mylan Lab, Inc. v. Akzo, N.V., 2 F.3d 56, 63 (4th Cir. 1993). At the same time, however, district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." Id. When a

11

plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery when, "against the defendant's affidavits," the plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland." Carefirst, 334 F.3d at 402.

As applied here, the Court finds that BSI's claim of personal jurisdiction appears to be both attenuated and based on bare allegations of personal jurisdiction. BSI has failed to proffer further facts that it could demonstrate through discovery that would be material to the jurisdictional ruling of this Court. Similarly, BSI has not suggested that the jurisdiction facts asserted by OC3 in its affidavits were inaccurate. Therefore, this Court will deny Plaintiff's request to conduct jurisdictional discovery.

*Motion to Amend*

Given that this Court has decided to grant OC3's motion to dismiss, BSI's motion to file an amended complaint would be futile and moot. Furthermore, the Scheduling Order issued by this Court on October 26, 2004, set December 10, 2004 as the deadline for joinder of additional parties and amended pleadings. BSI's motion for leave to file its second amended complaint was filed on October 2, 2006, more than two years after the deadline and after BSI amended its original complaint to add OC3, a defendant in this action. This Court noted in Rassoull v. Maximus, Inc., 209 F.R.D. 372, 373 (D. Md. 2002), that the standards for satisfying Rule 15(a) and Rule 16(b) are at odds. While Rule 15(a) states that "leave shall be given freely when justice so requires," Rule 16(b) states that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge[.]" Thus, "once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the

12

moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a)." Odyssey Travel Center, Inc. v. Ro Cruises, Inc., 262 F. Supp. 2d 618, 631 (D. Md. 2003); see also Potomac Electric Power Co. v. Electric Motor Supply, Inc., 190 F.R.D. 372, 375-76 (D. Md. 1999) (stating that "Rule 16(b)'s 'good cause' standard focuses on the timeliness of the amendment and the reasons for its tardy submission").

BSI failed to seek the required modification of the Scheduling Order that is necessary before the Court can address the merits of the motion for leave to amend the complaint. BSI's motion focuses solely on the arguments for leave to amend the complaint, but does nothing to explain the tardiness of the motion itself. BSI alleges in is Reply to OC3's opposition that due to the activity related to former Defendant Harvard.net at the beginning of 2005 and BSI's timely filing of its response to OC3's motion to dismiss was justification for the tardiness. The Court finds BSI's purported justification as insufficient. For the above reasons, this Court will deny BSI's Motion for Leave to File a Second Amended Complaint.

*Plaintiff's Request to Present Proof of Damages*

The only remaining matter in this case is Plaintiff's request to present proof of damages at an oral hearing, regarding the Entry of Default [62] against Defendant Paridox Ventures, Inc. pursuant to Fed. R. Civ. P. 55. As such, Plaintiff is directed to contact the Court within ten (10) days to set a hearing to present proof of damages against Defendant Paridox Ventures, Inc.

## CONCLUSION

For the aforementioned reasons, this Court GRANTS OC3's Motion to Dismiss the Complaint for Lack of Jurisdiction, DENIES BSI's Motion to Strike OC3's Reply in Support of Motion to Dismiss and for Leave to Take Jurisdictional Discovery, DENIES BSI's Motion for Leave to File a Second Amended Complaint, and DIRECTS Plaintiff to contact the Court within ten (10)

days to present proof of damages against Defendant Paridox Ventures, Inc.  An Order consistent with this Opinion will follow.


<u>March 6, 2007</u>                                                          <u>              /s/                         </u>
Date                                                                    Alexander Williams, Jr.
                                                                        United States District Judge